UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | |
|---|---|
| JAMES JARBOE | ) |
| | ) |
| Plaintiff, | )   Civil No. 09-88-ART |
| | ) |
| v. | ) |
| | )   **MEMORANDUM OPINION &** |
| MICHAEL J. ASTRUE, | )   **ORDER** |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant, | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

The *pro se* plaintiff, James Jarboe, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner"), which denied his December 1, 2005, application for disability insurance benefits ("DIB"). Because the Commissioner's decision was supported by substantial evidence and Jarboe's additional evidence is not new and material, the Court denies Jarboe's motion for summary judgment, R. 7, and grants the defendant's, R. 8.

**FACTUAL BACKGROUND**

Born in 1963, Jarboe worked as a mechanic from 1991 to 2005. Transcript ("Tr.") at 114. In 1991, Jarboe fell at work and sustained back, neck, and shoulder pain. *Id.* Dr. Gordon Air treated Jarboe for a minimal compression fracture of vertebrae T-12 in 1992. *Id.* at 167-170. As a result of this injury, Dr. Air concluded on Jarboe's last visit that Jarboe continued to have symptoms related to his back, neck, and shoulder but that he had a full active range of motion. *Id.* at 170. Jarboe's next medical records are dated 2003, when he was treated by Dr. John Shmitz for a broken toe. *Id.* at 171. Jarboe submits no record of treatment for back, neck, or shoulder pain between 1992

and 2005, although it persisted throughout this time. Jarboe alleges his disability began on October 15, 2005, when he started having more severe back cramps. *Id.* at 14. Jarboe went to the Summit Medical Group and saw Dr. Hansen for pain treatment on September 16, 2005, and December 6, 2005. *Id.* at 172-73. The medical notes from those treatments are illegible. *See id.*

Medical consultant Dr. Martin Fritzhand examined Jarboe and produced a report dated February 27, 2006. *Id.* at 174-76. Dr. Fritzhand noted that Jarboe had received some medical care, but had not been evaluated by a physician since 1998. *Id.* at 174. After physical examination, Dr. Fritzhand found that Jarboe "ambulates with a normal gait, and is comfortable in both the sitting and supine positions." *Id.* at 175. Dr. Fritzhand noted that "x-rays of the cervical and lumbar spines are necessary to assess a functional impairment." *Id.* at 176. "Assuming that x-rays would be noncontributory, then the patient does appear capable of performing at least a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." *Id.* Jarboe never obtained the x-rays.

After a review of Jarboe's medical history and Dr. Fritzhand's report, Dr. Joey Miracle classified Jarboe's alleged physical impairment as non-severe in a report dated March 13, 2006. *Id.* at 177-91. Dr. Carlos X. Hemandex also reviewed Jarboe's medical history and prepared a report dated June 6, 2006. Although he noted new developments, he adopted Dr. Miracle's findings. *Id.* at 207. Jarboe visited Independence Chiropractic for pain on January 23, 2007, and May 16, 2008. *Id.* at 230-31. In March 2007–after the alleged onset of disability–Jarboe fell and broke his hip and underwent hip surgery. *Id.* at 158; 210-19. Jarboe attended physical therapy for his hip throughout the spring of 2007. *Id.* at 220-29. An August 8, 2007, report from St. Elizabeth Medical Center discharged Jarboe from outpatient physical therapy with limited gait and decreased trunk control.

*Id.* at 219.

## PROCEDURAL BACKGROUND

Jarboe filed an application for DIB on December 1, 2005. Tr. at 14. A Report of Contact dated December 19, 2005, shows at the time of filing the application, Jarboe was still working but that his work was under the substantial gainful activity level. *Id*. at 16. The Social Security Administration ("SSA") denied his application initially on March 31, 2006, and then again upon reconsideration on June 13, 2006. *Id.* at 35-42. Thereafter, Jarboe filed a written request for a hearing. *Id.* at 43. On August 7, 2008, Administrative Law Judge Gregory O. Varo ("ALJ") conducted a hearing and heard testimony from the plaintiff. *Id.* at 462-502 (transcript of hearing).

At the hearing, Jarboe testified that before his alleged disability he worked as a mechanic for 15 years. *Id.* at 472-73. Initially, he lifted up to 100 pounds and was on his feet all day. Jarboe testified that he struggled with pain and back problems since his 1991 injury. *Id.* at 475. Because of his pain, Jarboe became self-employed and switched to working as a mechanic on motorcycles. *Id.* at 472-74. In 2005, Jarboe began to suffer cramps in his back and numbness in his arms. *Id.* at 475. His neck pain has become chronic over the years. *Id.* at 482. Finally, he testified that he suffers from hip pain, especially when the weather is cold. *Id.* at 485. Jarboe takes over the counter ibuprofen for his pain. *Id.* at 466-67. Jarboe testified that he has "a hard time standing up for over 15 minutes a time using my, working with my hands in front of me" and that he can usually sit for only 15-20 minutes without having to change positions. *Id.* at 475-76.

Vocational expert Linda Taber also testified at Jarboe's hearing. *See id*. at 494-501. Based on her examination of Jarboe and review of his medical history, she testified that he is limited to light work and no longer able to perform any of his past work. *Id.* at 495. She further testified that

there are many light, entry level work jobs that Jarboe could perform both in the state and nationally. *Id.* at 495-96. Jarboe's attorney asked Ms. Taber if Jarboe could hold one of the entry level jobs she listed if he were limited to sitting or standing for only 15 minutes at a time. *Id.* at 496. Ms. Taber responded that based on her experience, a person would need the ability to stand in a position at least 30 minutes for job placement. She concluded: "[s]o if you had to change every 15 minutes, you are probably not giving enough time on the task to maintain a, a job." *Id.* at 496-97.

Following the August 7, 2008, hearing, the ALJ issued a decision on September 9, 2008, finding that Jarboe was not disabled and thus not entitled to DIB. *Id.* at 16-20. On November 4, 2008, Jarboe filed his appeal of the decision, and submitted additional documentation which became part of the Appeals Council record. *Id.* at 10; *see id.* at 232-461. On April 25, 2009, the Appeals Council declined to review the ALJ's decision, *id.* at 7, at which point the ALJ's decision became the final decision of the defendant. Jarboe now seeks judicial review in this Court. He filed a motion for summary judgment, R. 8, as did the defendant, R. 9. Jarboe also filed a response to the defendant's motion, R. 10.

## DISCUSSION

Jarboe is a pro se litigant and therefore the Court must liberally construe his pleadings. *Spotts v. United States*, 429 F.2d 248, 250 (6th Cir. 2005). Jarboe argues that the ALJ's opinion gave too little weight to Jarboe's complaints, and specifically disputes the ALJ's finding that Jarboe's testimony about his limitations was not credible. Jarboe further disagrees with the findings of fact and argues that the ALJ did not properly consider whether Jarboe's back and neck conditions met the listing of impairments. He makes many of these arguments based on new evidence submitted to the Appeals Council. Since Jarboe's arguments are without merit, the Court denies his

motion for summary judgment and grants the defendant's motion for summary judgment.

Review of the ALJ's Findings

Judicial review is limited to determining whether substantial evidence supported the ALJ's ruling. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Social Security Act provides that findings of the Commissioner as to any fact shall be conclusive if supported by substantial evidence. *Id.* (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Liberally construing Jarboe's pleadings, he argues that the ALJ's findings were not based on substantial evidence. Jarboe is incorrect. The ALJ correctly applied the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. Tr. at 16-20. First, he found that Jarboe has not engaged in substantial gainful activity since his alleged onset of disability. *Id*. at 16. Second, he found Jarboe's chronic neck and back pain and fractured hip to be severe impairments. *Id*. at 16-17. Third, he concluded that the impairment did not meet or medically equal one listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 17-18. Fourth, he accepted that Jarboe could not perform past relevant work. *Id.* at 19. However, at the fifth step, the ALJ found that there are significant jobs in the national economy that Jarboe can perform. *Id.*

In challenging the ALJ's findings, Jarboe repeatedly relies on evidence that was not in the record before the ALJ. Jarboe submitted some of this evidence to the Appeals Council, however, the Court cannot consider this evidence in its determination of whether the Commissioner's decision was supported by substantial evidence. "Where the Appeals Council considers new evidence but

declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify or reverse the ALJ's decision." *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *see* 42 U.S.C. § 405(g)**.**

Looking at the evidence Jarboe *did* submit to the ALJ, he argues the ALJ failed to give appropriate weight to his testimony at the hearing. R. 8 at 2-3. This argument fails. Though the ALJ found Jarboe "generally credible regarding the nature of his impairments that were established by medical evidence in the record," he did not find credible Jarboe's testimony about the severity of his symptoms and limitations. *Id.* at 19. Specifically, in assessing his testimony's credibility, the ALJ needed to decide whether either: (1) the objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Blacha v. Secy. of Health and Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990) (quoting *Duncan v. Secy. of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).

The ALJ properly considered the limited objective medical evidence available to him at the hearing. *Id.* at 14-18. The medical records before the ALJ show no treatment for back, neck, or shoulder pain between 1992 and September 2005. *Id.* at 18. Though Jarboe sought medical treatment for his condition in December 2005, the ALJ noted there was again a gap in treatment between December 6, 2005, and December 22, 2006. *Id.* at 19. The ALJ considered that Jarboe's only evidence of treatment following December 2006 was visits to a chiropractor on January 23, 2007, and May 16, 2008. *Id.* Thus, the ALJ did not find medical evidence to support Jarboe's testimony of the intensity, persistence, and limited effects of the symptoms.

Significantly, there was no medical source from any treating physician, which the ALJ rightfully noted. *Id.* at 18. Thus, the ALJ relied heavily on the report of Dr. Fritzhand, who found that Jarboe ambulated with normal gait, could bend forward, had a good range of motion and no joint abnormality. *Id.*

Further, the ALJ considered Jarboe's testimony and gave weight to other parts of it that suggest he did *not* suffer from severe back and neck pain. Jarboe does not take, nor has he been prescribed, any pain medication besides ibuprofen. Through 2005 and 2006, Jarboe was still self-employed as a mechanic. *Id.* at 18. The ALJ considered that Jarboe lives alone, cooks, cleans, drives, goes shopping, and handles his money. *Id.* at 19. Jarboe also testified that he sometimes takes car trips over one hour. *Id.* at 479-80. Jarboe does not point to any medical evidence before the ALJ to support his testimony that he could sit or stand only for 10-15 minutes or to show that his medical condition was so severe that it could reasonably be expected to cause such severe pain. Thus, the ALJ's credibility finding will not be disturbed. *See, e.g., Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir.1987) ("Since the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." (citing *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984))).

Second, Jarboe argues that the weight of the evidence shows that he is disabled under 20 C.F.R. pt. 404, subpt. P, app. 1. R. 8 at 2-3. He is incorrect. If a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). At this step of the ALJ's sequential evaluation process, the burden is on the claimant to show that he meets or equals an impairment listed in Appendix 1 to the regulations. *See Buress*

*v. Sec'y of Heath and Human Srvs.*, 835 F.2d 139, 140 (6th Cir. 1987). Under the regulations, the ALJ is to consider the combined effect of all of Jarboe's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to render the claimant disabled. *See Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1071 (6th Cir. 1992) (citing 20 C.F.R. § 404.1523).

Jarboe points to specific impairments in the regulations that he believes his medical condition equals. R. 8 at 2-3. However, he bases his arguments on evidence that was not before the ALJ: his 1998 and 2000 MRIs and other physician reports. *Id.* As already explained, the Court can only review the ALJ's decision based on the record before him. The ALJ relied on the consultative report of Dr. Martin Fritzhand, who found that Jarboe is capable of at least a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects. Tr. at 17; *see id.* at 174-76. The ALJ gave Dr. Fritzhand's opinion controlling weight since it was supported by objective medical evidence. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). His report stands uncontradicted by any evidence in the ALJ's record. Thus, the Commissioner's decision is based on substantial evidence.

Finally, Jarboe mentions in his motion that he received worker's compensation for his back injury. R. 8 at 4. In his request for review by the Appeals Council, Jarboe states that ALJ Varo overruled a prior ALJ decision, referencing his worker's compensation determination. However, the Social Security regulations clearly state that the Commissioner "must make a disability [ ] determination based on social security law. Therefore, a determination made by another agency that you are disabled [ ] is not binding on [the Commissioner]." 20 C.F.R. § 404.1504. Accordingly, "a claimant is not entitled to Social Security disability 'just because he is receiving worker's

8

compensation.'" *Gaskin v.Comm'r of Soc. Sec.*, 280 F. App'x 472, 477 (6th Cir. 2008) (quoting *Hampton v. Sect'y of Health & Human Servs.*, No. 91-6468, 1992 WL 188112, at *1 (6th Cir. Aug. 6, 1992)). Thus, Jarboe's status as a worker's compensation recipient has no bearing on the Commissioner's decision, or on this Court's review of that decision.

Additional Evidence

Jarboe argues that the ALJ did not have all the relevant medical documents required to make a determination of disability. *See* R. 8 at 1. Jarboe submitted new evidence to the Appeals Council. Many of these documents are records from Jarboe's workers compensation proceedings. Tr. at 249; 323-85. He also submits additional medical records from 1992-1995. *Id.* at 252-53; 255-64; 300-20. He submits 1998 and 2000 MRI reports. Finally, he submits an evaluation from his chiropractor, Dr. Dean Skinner, completed in 2007. *Id.* at 420-25. Though the Appeals Council considered the new documents, *id.* at 10, it declined to review the ALJ's findings. *Id.* at 7-9.

As explained above, the Court cannot consider evidence submitted to the Appeals Council in its review. *See Cline*, 96 F.3d at 148. "The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is **new and material** and that there was **good cause** for not presenting the evidence in the previous proceedings." *Id.* (emphasis added). Jarboe's evidence is not new and he fails to show good cause for not presenting it in the previous proceedings. "[E]vidence is only new if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).

None of the additional medical evidence submitted to the Appeals Council is dated after Jarboe's disability hearing, thus none of it is new. Jarboe offers several reasons why the ALJ did not

have these records, but none of them constitute good cause. Jarboe argues that the SSA failed to obtain the medical records he listed in his DIB application. R. 10 at 1. Jarboe is correct that the SSA usually contacts treating physicians, and Jarboe properly listed his doctors on his initial application. Tr. at 116. But the SSA notified Jarboe in its March 31, 2006, denial of his application that it had only received records from Dr. Gordon Air, Dr. John Schmitz, and Medical & Occupational Health Consul PSC. *Id.* at 35. Upon Jarboe's request for reconsideration, the SSA obtained additional records from the Summit Medical Group. *Id.* at 40. On July 8, 2008, Jarboe was notified of his hearing in writing. *Id.* at 26. The letter instructed Jarboe to send an additional information immediately or bring it to the hearing. *Id.* ("If there is more evidence you want to submit, get it to me right away. If you cannot get the evidence to me before the hearing, bring it to the hearing. If you want to see your file before the date of the hearing, call this office."). At that point, it became Jarboe's responsibility to ensure that all of the relevant medical information was part of the ALJ's record.

Jarboe states that he attempted to submit these records but that his attorney failed to follow through with the Social Security Administration. *Id.* at 239, 419; R. 8 at 5. Attorney failure does not constitute good cause. *Taylor v. Comm'r of Soc. Sec.*, 43 F. App'x 941 (6th Cir. 2002). In *Taylor*, the Sixth Circuit declined to consider evidence that was submitted for the first time at the district court level after the claimant changed counsel. "[T]here is absolutely no statutory or decisional authority for [the] unstated, but unmistakable, premise that the alleged incompetence of [plaintiff's] first attorney constitutes 'good cause' in this context. In addition, all of the proposed 'new' evidence was in existence at the time of the hearing, but it was not produced for whatever reason." *Id.* at 943; *see also Gropp v. Astrue*, 2009 WL 5103619, at *4 (W.D. Ky. Dec. 16, 2009)

("Besides implying that previous counsel 'dropped the ball,' the plaintiff has not attempted to provide 'good cause' justification for the failure to submit the evidence prior to the ALJ's decision.").

Jarboe also believes that the evidence was deliberately omitted from his file, R. 10 at 2, however, he offers no facts to support this statement.

Finally, Jarboe argues that the Appeals Council should have ordered an updated medical opinion in light of the additional medical evidence. R. 8 at 4. Social Security Ruling 96-6p explains the Appeals Council's responsibility in these situations: "[T]he Appeals Council must obtain an updated medical opinion from a medical expert . . . when additional medical evidence is received that in the opinion of [ ] the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *4 (1996). Jarboe must show that the additional medical evidence called for an updated medical expert opinion. *Cf. Kelly v. Comm of Soc. Sec.*, 314 F. App'x 827, 829-30 (6th Cir. 2009) (discussing when the ALJ must consider additional evidence).

As a preliminary matter, it seems odd that the Appeals Council would be required to consider evidence not presented to the ALJ that existed at the time of the ALJ's ruling. *See* C.F.R. 20 § 404.979. In the Notice of Appeals Council Action, the Appeals Council stated that it "considered the additional evidence listed in the enclosed Order of Appeals Council." Tr. at 7-8. But all of the listed evidence, *id.* at 10, was in existence at the time of the ALJ's hearing. There are multiple rules in both this court and the appellate court that prevent a litigant from creating additional levels of review by holding back evidence and then presenting it after receiving an unfavorable result. If, on the other hand, a claimant presents truly **new** evidence to an Appeals Council, that would be a

different matter. As discussed above, Jarboe did not submit any truly new evidence here. In any event, for the reasons given below, Jarboe's additional evidence would not have changed the ALJ's ruling or the ruling of this Court.

The Court can review the Appeals Council's actions under 42 U.S.C. § 405(g) sentence four, which gives the district court power "to enter, upon the pleadings and the transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." *See Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171 (6th Cir. 1994). Agencies must follow their regulations, and although Social Security Rulings do not have the same force and effect as statutes or regulations, they "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 n1 (6th Cir. 2009).

Jarboe focuses primarily on his 2000 MRI report as proof that he would meet the Medical Criteria for Determination of Disability if given another medical consultation. R. 8 at 2-3. Jarboe believes that his impairments meet or equal Listings 1.02 "Major dysfunction of a joint(s)" and Listing 1.04 "Disorders of the spine." R. 8 at 2-3; 20 C.F.R. pt. 404, subpt. P., app. 1, Listing 1.02, 1.04 (2003). In order to determine whether the Appeals Council correctly declined to order a new consultation, the Court must look at whether there is any likelihood that the evidence submitted to the Appeals Council could change Dr. Fritzhand's, Dr. Miracle, and Dr.Hernandez's consultative findings.

Listing 1.02 requires "gross anatomical deformity," which as defined, even Jarboe's 2000 MRI does not show. *See* 20 C.F.R. pt. 404, subpt. P., app. 1, Listing 1.02 ("Listing 1.02"). Thus, Listing 1.02 cannot apply. Listing 1.04 requires "compromise of the nerve root or spinal cord." 20

C.F.R. pt. 404, subpt. P., app. 1, Listing 1.04 ("Listing 1.04"). The 2000 MRI report explains "there is no evident cord compression . . . there is no intrinsic cord abnormality" but states that Jarboe's disc protrusion "does narrow the right neural foramen for the C7 root." Tr. 432. Thus based on the physical condition of his nerve root, under the 2000 MRI report Jarboe meets the first part of Listing 1.04.

Although the Listings specify medical impairments, they also incorporate findings about the claimant's functional abilities. Listing 1.04 requires, along with root damage, either: (A) "sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test"; (B) "Spinal arachnoiditis, resulting in the need for changes in position or posture more than once every 2 hours"; or (C) "inability to ambulate effectively." In 2006, Dr. Fritzhand evaluated Jarboe based on his past medical history and a physical examination. Tr. 174-76. Dr. Miracle and Dr. Hernandez evaluated Jarboe later in the year and adopted Dr. Fritzhand's findings. *Id.* at 177, 207. Dr. Fritzhand found that "on examination of the spine, straight leg raising is normal to 90 *degrees* bilaterally, and there is no leg length discrepancy." *Id.* at 174. Therefore, Jarboe's impairment does not meet Listing 1.04(A). Regarding Listing 1.04(B), the ALJ found based on the evidence in the record and Jarboe's testimony at the hearing that Jarboe does not need to change in position or posture more than once every 2 hours. *Id.* at 18-19. The MRI report could not change the determination of functional ability based on a physical examination and analysis of Jarboe's daily activities that was performed six year *after* the MRI report. Finally, Dr. Fritzhand found that "the patient ambulates with a normal gait and can forward bend without difficulty." *Id.* at 176. This means Jarboe's impairment does not equal Listing 1.04(C). Thus, the Court will not disturb the Appeals Councils' findings that the MRI report did not require another medical consultation under

SSR 96-6p. For the reasons explained, a new consultation was not required because the MRI would not likely disturb Dr. Fritzhand's determination that Jarboe's impairments do not meet Listings 1.02 or 1.04.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)    The plaintiff's motion for summary judgment, R. 8, is **DENIED**;

(2)    The defendant's motion for summary judgment, R. 9, is **GRANTED**; and

(3)    A Judgment shall entered concurrently with this Memorandum Opinion and Order.

This the 12th day of February, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge

14